UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | |
|---|---|
| JASON SNIVELY, STEPHEN CLARK, AND ALL OTHERS SIMILARLY SITUATED UNDER 29 USC 216(B),<br><br>    Plaintiffs,<br><br>VERSUS<br><br>PEAK PRESSURE CONTROL, LLC, AND NINE ENERGY SERVICES, L.L.C.<br><br>    Defendants. | CIVIL ACTION NO. 7:15-CV-00134-HLH |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR NOTICE AND CONDITIONAL CERTIFICATION**

**I.     INTRODUCTION**

Peak Pressure Control, LLC ("Peak") and Nine Energy Service, LLC ("Nine," misnamed as "Nine Energy Services, LLC" in the Complaint), oppose Plaintiffs' Motion for Notice and Conditional Certification.[1] Rec. Doc. 33. Jason Snively filed this lawsuit on August 26, 2015, on behalf of himself and others allegedly similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Rec. Doc. 1. Plaintiff claims he and other pressure control operators were entitled to but did not receive overtime pay while working for Peak and/or Nine. *Id.* Defendants deny the claims because Plaintiff and other operators, highly-compensated, highly-skilled, DOT-regulated drivers, were at all times exempt from overtime under one or

---

[1] In support of this opposition, Defendants attach the following: Appendix, addressing Defendants' objections to proposed notice; Exhibit 1, Declaration of Brett Quigley; and Exhibit 2, Declaration of Bruce Morgan.

{B1071281.1}

1

more highly individualized, fact-specific FLSA exemptions, including the Motor Carrier Act ("MCA") exemption, 29 U.S.C. § 213(b)(1), the highly-compensated employee exemption, 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.601(a), and, as part of the highly-compensated exemption and/or individually, the executive, administrative, and/or professional exemptions, 29 U.S.C. § 213(a)(1). Rec. Doc. 22.

Plaintiff's motion should be denied because (1) he has failed to provide substantial allegations, much less evidence, of a uniform policy, plan, or decision infected by discrimination as required to show he and other operators are similarly situated, and (2) exemption-based liability issues, as well as damages issues, will require individualized discovery and determinations. Therefore, collective adjudication is not legally proper, and it would be neither efficient nor economical for the Court or the parties to conditionally certify an action for which decertification would be inevitable.

## II.   PLAINTIFF'S BURDEN, WHILE LENIENT, IS NOT "INVISIBLE" AND CONDITIONAL CERTIFICATION IS FAR FROM AUTOMATIC

While the FLSA permits an individual to assert claims on behalf of himself and any "similarly situated" persons, it does not define "similarly situated" or expressly provide for class certification or judicially approved notice to putative plaintiffs. 29 U.S.C. § 216(b). The Supreme Court has recognized that district courts "have discretion, in *appropriate* cases, to implement" the FLSA's collective action mechanism "by facilitating notice to potential plaintiffs." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (emphasis added). This mechanism is only proper in cases involving "common issues of law and fact arising from the same alleged . . . activity," such that resolution of common issues in one proceeding would promote efficiency and judicial economy. *Id.* at 170.

The Fifth Circuit has yet to decide "how district courts should determine whether plaintiffs are sufficiently 'similarly situated' to advance their claims together in a single *§ 216(b)* action." *Acevedo v. Allsup's Convenience Stores, Inc.,* 600 F.3d 516, 519 n. 1 (5th Cir. 2010). However, the majority of district courts in this circuit have adopted the two-stage process recognized in *Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D.N.J. 1988). *See, e.g., Pedigo v. 30003 South Lamar, LLP*, 666 F. Supp. 2d 693, 695, n. 5 (W. D. Tex. 2009). During the initial stage, Plaintiff bears the burden of showing (1) a reasonable basis to believe aggrieved individuals exist, (2) that those individuals are similarly situated to him, and (3) that they desire to opt into the lawsuit. *Castillo v. Hernandez*, 2010 WL 4595811, at *4 (W.D. Tex. Nov. 4, 2010). Most important, the plaintiff must come forward with "'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination.'" *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 n. 8 (5th Cir. 1995), quoting *Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D. 392, 407 (D.N.J.1988) (emphasis added).

"A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008, *4 (S.D. Tex. Jan. 24, 2007) (Atlas, J.) (denying conditional certification); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005). If conditional certification is granted, then, during the second stage, the court decides based on the evidence developed during discovery whether the conditionally-certified class should be decertified. *Basco v. Wal-Mart Stores, Inc*., 2004 WL 1497709, *3 (E.D. La. July 2, 2004).

While Plaintiffs' burden at this initial stage is relatively lenient, the burden is not "invisible" nor is conditional certification automatic:

> While the plaintiffs' burden at this stage is not onerous, neither is it invisible. *Parker v. Rowland Express, Inc*., 492 F.Supp.2d 1159, 1164 (D.Minn. 2007). In deciding whether plaintiffs have met their burden, the court 'is mindful that it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation.' *Lentz v. Spanky's Rest. II, Inc*., 491 F.Supp.2d 663, 669 (N.D.Tex. 2007) (internal citations omitted). 'Further, employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense[ ].' *Id.* (internal citations and quotations omitted).

*Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 706-07 (N.D. Tex. 2008). "[N]otice is by no means mandatory" and "the relevant inquiry in each particular case is whether it would be appropriate to exercise such discretion." *Harris v. Fee Transp. Servs., Inc.*, 2006 WL 1994586, *2 (N.D. Tex. May 15, 2006).

### III.   ANALYSIS

#### A.   Plaintiff has failed to allege, substantially or otherwise, a uniform policy, plan, or decision warranting conditional certification

The Fifth Circuit in *Mooney* made clear that Plaintiff must present substantial allegations of a uniform policy, plan, or decision infected by discrimination to show he and the putative plaintiffs are "similarly situated," thus warranting conditional certification. *Mooney*, 54 F.3d at 1214 n. 8. The only attempt by Plaintiff to meet this requirement is his allegation that he and other operators were all paid a salary plus bonuses, with no overtime, and were allegedly misclassified as exempt. Rec. Doc. 1, ¶ 14. However, this is only an alleged FLSA violation, not the alleged discriminatory policy, plan, or decision that caused or lead to the purported violation, which is required to justify conditional certification. *Andel v. Patterson–UTI Drilling Co., LLC*, 280 F.R.D. 287 (S.D. Tex. 2012) (rejecting plaintiffs' argument that an alleged uniform misclassification of independent contractors satisfied its burden for conditional certification and

denying certification for lack of evidence of a uniform, widespread policy or practice of discrimination); *Blake v. Hewlett–Packard Co.,* 2013 WL 3753965 (S.D. Tex. July 11, 2013) (denying motion for conditional certification of alleged misclassification of "exempt" employees because evidence of a single human resources decision-maker and an uniform "exempt" classification do not show a uniform policy or practice of discrimination).

Courts have made clear that "[m]erely showing that the employer classified a group of employees as exempt is not sufficient to establish that [those] employees **are** similarly situated for the purposes of an FLSA collective action." *King v. West Corporation*, 2006 U.S. Dist. LEXIS 3926, *41 (D. Neb. 2006) (citation omitted); *see also Morisky*, 111 F. Supp. 2d at 498 (finding defendants' "common scheme" of classifying employees as exempt did not bind class sufficiently such that plaintiffs were "similarly situated"); *Oetinger v. First Residential Mortgage Network, Inc.*, 2009 U.S. Dist. LEXIS 61877 (W.D. Ky. Jul. 15, 2009) ("Merely being classified as exempt does not give rise to a right of action under 29 U.S.C. 216(b). . . . [C]ompanies may indeed apply company-wide policies to their employees, but these policies must cause the alleged FLSA violation for the policy to be considered as a factor in determining whether employees are 'similarly situated' for purposes of bringing a collective action."). The required allegations are absent from the Complaint and from the 18 declarations submitted with Plaintiff's motion. As there is no specification of the uniform, discriminatory policy, plan, or decision that cause the alleged FLSA violation – only references to the alleged violation itself (alleged misclassification and failure to pay overtime) – conditional certification is improper.

**B.   Liability issues will be highly individualized based on the exemption defenses at issue, such that representative discovery and adjudication is improper**

The gravamen of Plaintiff's Complaint is that he and other operators are entitled to FLSA overtime. Defendants maintain one or more of several overtime exemptions apply to Plaintiffs.

The exemptions at issue are, by nature, individualized and require discovery and consideration of numerous plaintiff-specific elements to determine liability.

### 1. Individualized issues raised by the MCA exemption

The FLSA exempts from its overtime requirements "<u>any employee</u> with respect to whom the Secretary of Transportation ["DOT"] has power to establish qualifications and maximum horus of service" pursuant to 49 U.S.C. § 31502, the Motor Carrier Act. 29 U.S.C. § 213(b)(1) (emphasis added). The MCA exemption depends upon both the class to which the employer belongs and "the class of work involved in <u>the employee's job</u>." 29 C.F.R. § 782.2(a). The DOT's power of regulation extends to employees, including drivers, driver's helpers, loaders, and mechanics, who engage in or are likely to be called upon to engage in activities "of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Id.*

In addition to the class and character of each employee's job duties, according to the U.S. Department of Labor's ("DOL") regulations the exemption is to be evaluated on a workweek-by-workweek basis. 29 C.F.R. § 782.2(a) (the employee comes within the exemption "in all workweeks in which he is employed at such job" and discussing whether the employee's activities are "devoted to such safety-affecting work <u>in the particular workweek</u>" at hand).

A series of amendments affecting the exemption imposed yet another individualized factor in determining whether the exemption applies. In 2005, Congress enacted the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), Pub. L. No. 109-59, 119 Stat. 114. This amendment limited the DOT's regulatory power to those carriers using commercial motor vehicles, which were defined to have a gross vehicle

weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater. 49 U.S.C. § 31132(1)(A). In 2008, Congress enacted the SAFETEA-LU Technical Corrections Act of 2008 ("TCA"), Pub. L. No. 110-244, 122 Stat. 1572, which restored the scope of the DOT's regulatory jurisdiction by eliminating the "commercial" requirement and, thus, the limitation imposed on the DOT's authority based on the weight of the vehicle. At the same time, however, the TCA narrowed the scope of the MCA exemption, separately providing that the overtime provisions of the FLSA shall apply to "a covered employee notwithstanding" the MCA exemption. TCA § 306.

The TCA specifically refers to a "covered employee" as an "<u>individual</u>" whose work "in whole or in part" is "that of a driver, driver's helper, loader or mechanic" and affects "the safety of operation of motor vehicles <u>weighing 10,000 pounds or less</u> in transportation on public highways in interstate or foreign commerce," and "who performs duties on motor vehicles weighing 10,000 pounds or less." TCA § 306(e). The DOL issued Field Assistance Bulletin No. 2010-2 on November 4, 2012, stating that the MCA exemption does not apply "<u>in any workweek</u>" in which the individual's work is as described in the TCA's small vehicle exception.

Thus, this exemption alone will require a plaintiff-by-plaintiff, job-by-job, vehicle-by-vehicle, week-by-week analysis in order to assess liability. The evidence presented by Defendants makes it clear that the MCA exemption is at issue because the Company is a motor carrier regulated by the DOT, its operators are assigned vehicles from a fleet consisting of Ford 550s with a gross vehicle weight rating well in excess of 10,000 pounds, and they travel or are reasonably expected to travel in interstate commerce to perform pressure control services for the Company's customers. Exhibits 1 and 2, Declarations of Brett Quigley and Bruce Morgan, respectively. There simply is no way to conduct discovery on or adjudicate the issues raised in

this case on a collective basis, nor is there any benefit to conditionally certifying a case that inevitably will have to be decertified.

One court presented with the same issue agreed with Defendants and refused to conditionally certify an FLSA collective action based on the individualized issues raised by the MCA exemption defense. In *Bishop v. Petro-Chemical Transport, LLC*, 582 F.Supp.2d 1290, 1297 (E.D. Cal. July 17, 2008), the court agreed with Defendant's argument that an "intensive individualized inquiry" as to whether each potential class member drove across state lines would preclude conditional certification even if the plaintiff in that case had shown that he was similarly situated to other drivers. Other courts have more recently cited the individualized inquiry required in MCA exemption cases in decertifying cases that have previously been conditionally certified. *Vanzinni v. Action Meat Distributors*, 995 F.Supp.2d 703, 723 (S.D. Tex. Jan. 31, 2014) (noting the "highly factual, individualized inquiry that determining whether the MCA exemption applies" would require precluded plaintiff who survived summary judgment from remaining in the certified group); *Rojas v. Garda CL Se., Inc.*, 2015 WL 5084135 (S.D. Fla. 2015), *appeal docketed*, 15-14379 (11th Cir. Sept. 29, 2015) (decertifying the collective action and noting that determining coverage "will require an individual inquiry into the amount of time each opt-in plaintiff used a light or personal vehicle as opposed to an armored vehicle").

### 2. Individualized issues raised by highly-compensated and other § 213(a)(1) exemptions

Pressure control operators provide highly-skilled and specialized expertise to the company's customers in well completion and workover operations. Exhibit 2, Declaration of Bruce Morgan. Their substantial compensation is a reflection of the exempt nature of their duties. As the Supreme Court noted in *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 183 L. Ed. 2d 153 (2012), the FLSA was not intended to apply to well-compensated

employees, referring to those who earned approximately $70,000 annually. Defendants have presented evidence that most if not all of the pressure control operators since 2012 have earned more than $100,000 annually, including a base annual salary of at least $40,000, such that they are clearly high earners of the type referred to by the Supreme Court and contemplated in the highly-compensated exemption. And, as the DOL recognized in its regulations, "a high level of compensation is a strong indicator of an employee's exempt status" such that the performance of any one of the exempt duties of the executive, administrative, or professional exemptions combined with the high level of compensation will make the employee exempt. 29 C.F.R. § 541.601(c).

Because operators are highly compensated, their compensation level plus any one of the following duties will make an employee exempt:

> Management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> Customarily and regularly directing the work of two or more other employees;
>
> Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight;
>
> The performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;
>
> The exercise of discretion and independent judgment with respect to matters of significance;
>
> The performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

29 C.F.R. §§ 541.100, 200, and 300. The terms "primary duty," "management," "department or subdivision," "two or more other employees," "particular weight," "discretion and independent judgment," and other key terms used to describe these exempt duties are further defined in the regulations for the purpose of this analysis. 29 C.F.R. §§ 541.100, *et al.* Whether any operator satisfies the highly-compensated exemption, or any other individual Section 541 exemption at issue, will involve a highly individualized analysis.

Other courts have recognized the impediment presented by individualized exemption issues to certification. "As the ultimate issue here is whether plaintiffs are misclassified, a **fact-intensive** inquiry into their respective employment experiences is required." Johnson v. Big Lots Stores, Inc., 561 F.Supp.2d 567, 575 (E.D. La. 2008) (emphasis added). Exemption defenses are inherently individualized and inhibit the efficiency of proceeding on a collective basis. *Thiessen v. General Electric Capital Corporation,* 996 F. Supp. 1071, 1080 (D. Kansas 1998), class decertified in *Thiessen v. General Electric Capital Corporation*, 13 F. Supp. 2d 1131 (D. Kansas 1998); *Bayles v. American Medical Response of Colorado,* 950 F. Supp. 1053, 1067 (D. Colorado 1996); *Brooks v. Bellsouth Telecommunications, Inc.,* 164 F.R.D. 561, 569 (N.D. Al. 1995). As one court noted, the determination of whether an employee satisfies executive exemption criteria, one of the exemptions at issue in this lawsuit, is "an individual, fact-specific analysis of each employee's relevant statutory exemption criteria." *Aquilino v. Home Depot, U.S.A., Inc.,* 2011 U.S. Dist. LEXIS 15759, *20-21 (D.N.J. Feb. 15, 2011), citing *Morisky,* 111 F. Supp. 2d at 498; *see also Reyes,* 2007 U.S. Dist. LEXIS 1461 at *26 (acknowledging in defense analysis that "the degree of discretion and authority each [opt-in Plaintiff] exercised varied depending on store management and store demographics, making this case particularly unsuitable for collective treatment when applying exemption analysis"). Another court recently

reached the same conclusion when evaluating the individualized nature of the analyses required in assessing the administrative and executive exemptions, noting that the employer "will have highly individualized defenses to the various claims" and that "the Court would have to go through an individualized appraisal of the employee's duties and responsibilities." *Oetinger*, 2009 U.S. Dist. LEXIS 61877 at *10 (plaintiffs claimed they were similarly situated because they were all classified as exempt, but the exemption defenses required examination of individual duties and responsibilities).

### 3. The declarations offered in support of Plaintiff's motion are defective in many respects and consist primarily of inadmissible testimony

The 18 declarations submitted by Plaintiff in support of his motion do not further his cause in seeking conditional certification as they consist primarily of "conclusory allegations," which are insufficient to meet this initial burden. *H&R Block*, 186 F.R.D. at 400. Likewise, "unsupported assertions of wide-spread FLSA violations, such as the ones made here, [do] not satisfy the movant's 216(b) burden." *H&R Block*, 186 F.R.D. at 400 (citing *Haynes v. Singer Co.*, 696 F.2d 884 (11th Cir. 1983)). Paragraphs 1-6 and 8 of each Plaintiff's declaration are virtually identical save for their dates of employment and specific job locations. They also contain many statements not supported by personal knowledge ("I understand there were/are approximately 50 pressure control operators who did/are doing the same type of work I did . . . ."; "These individuals worked under the same conditions that I did in that they performed the sme duties I described above and were also paid under a base salary plus bonus compensation plan . . . ."). Rec. Doc. 33-3. These allegations, replete throughout the declarations, are conclusory and without any basis in personal knowledge and, thus, cannot be considered in support of Plaintiff's motion.

There is a critical distinction between the type of <u>substantial allegations</u> required by courts in the Fifth Circuit to support a request for conditional certification, and the type of <u>conclusory allegations</u> that the same courts have repeatedly rejected. For example, in *Stiles v. FFE Transp. Servs.*, 2010 U.S. Dist. LEXIS 24250 (N.D. Tex. Mar. 15, 2010), the court considered the plaintiffs' own declarations, which were "close to identical in substance" and consisted "primarily of conclusory allegations unsupported by any facts based on … personal knowledge." *Id*. at *3. There, the plaintiffs declared that from their experience and conversations with other employees, each knew his colleagues often worked in excess of 40 hours per week and were subject to the same compensation policies and procedure. *Id*. The court found plaintiffs' attribution of personal knowledge of other employees' work habits and duties to "experience and conversations with other employees" to be vague, conclusory, and insufficient evidence. *Id*. Ultimately, even under the lenient standard, the declarations failed to support conditional certification. *Id*., citing *Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008) (conculsory allegations in affidavits submitted by plaintiffs were insufficient to warrant conditional class certification). *See also Lentz*, 491 F. Supp. 2d at 669 (conditional certification should be denied because plaintiff submitted only conclusory allegations); *H & R Block v. Housden*, 186 F.R.D. 399, 400 (E.D.Tex. 1999) (conditional certification not warranted because plaintiffs failed to identify potential plaintiffs, submit affidavits of potential plaintiffs, and submit other evidence showing a widespread plan of discrimination).

## IV. <u>CONCLUSION</u>

Even at this early stage in the case and in spite of the relatively lenient burden for conditional certification, the case law and record overwhelmingly show that this action is not appropriate for conditional certification. Plaintiff failed to allege the requisite discriminatory

plan, practice, or decision uniformly resulting in the alleged FLSA violation. Additionally, the MCA and other exemption defenses will require plaintiff-specific discovery and preclude representative adjudication. Not every FLSA case is proper for collective action treatment, and this is one of those cases, however few they may be. Conditional certification is not automatic and the standard is not invisible, as Plaintiff would have the Court believe. The interests of efficiency and judicial economy would not be served by conditional certification as it would only delay inevitable and necessary individual litigation of Plaintiffs' claims.

Respectfully submitted,

*/s/ Jennifer L. Anderson*
Jennifer L. Anderson
(TX Bar No. 24047796)
Jones Walker LLP
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, LA 70809
Telephone: (225) 248-2040
Facsimile: (225) 248-3040
E-mail: janderson@joneswalker.com

and

Christopher S. Mann
(TX Bar No. 24061563)
Jones Walker LLP
201 St. Charles Avenue
New Orleans, LA 70170-5100
Telephone: (504) 582-8332
Facsimile: (504) 589-8332
E-mail: cmann@joneswalker.com

*Attorneys for Peak Pressure Control, LLC and Nine Energy Service, LLC*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on January 6, 2016, a copy of the foregoing was filed electronically using the Court's CM/ECF system and served in accordance with the Federal Rules of Civil Procedure. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.


          */s/ Jennifer L. Anderson*
           Jennifer L. Anderson