**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **JASON SNIVELY, STEPHEN CLARK,** | § | |
| **and all others similarly situated;** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **No.  MO:15-CV-00134-DC** |
| | § | |
| **PEAK PRESSURE CONTROL, LLC,** | § | |
| **and  NINE ENERGY SERVICES, LLC,** | § | |
| *Defendants.* | § | |

## ORDER DENYING DEFENDANTS' MOTION FOR DECERTIFICATION

BEFORE THE COURT is Defendants Peak Pressure Control, LLC, and Nine Energy Services, LLC's Motion for Decertification of FLSA § 216(b) Conditionally-Certified Collective Action. (Doc. 146). After due consideration, the Court **DENIES** Defendants' Motion. *Id.*

### I.   FACTUAL BACKGROUND

Plaintiffs filed this case on August 26, 2015, alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et. seq.* (Doc. 1). Plaintiffs claim they never received overtime for hours worked in excess of 40 hours in a single workweek. (Doc. 85 ¶ 1). On February 29, 2016, the Court conditionally certified the case for the following class: "All pressure control operators who were employed by Nine Energy Services, LLC or Peak Pressure Control, LLC from August 26, 2012, to the present who were paid in whole or in part on a salary basis." (Doc. 56). After the close of the opt-in period, approximately 70 Plaintiffs remain in the suit. (Doc. 146 at 3). To ease the discovery burden, the parties chose 16 discovery-group Plaintiffs. *Id.*

On May 1, 2018, Defendants filed the motion at issue to decertify this collective action. *Id.* Defendants contend the Court should decertify this case because:

(1) the claims, defenses and liability issues in the case are inherently individualized, which makes a fair and accurate determination [of] liability and exemption defenses impossible on a representative basis, (2) Plaintiffs are not similarly situated to one another based [on] their differing positions, duties, and the individualized nature and circumstances of each job performed, and (3) any "representative" evidence is not truly representative and may create liability where there is none – or vice versa – such that proceeding as collective action is unfair to the parties.

*Id.* at 4. The parties filed a response and reply to Defendants' motion. (Docs. 171, 180).[1]

## II.   LEGAL STANDARD

An employee may bring an action for violating the minimum wage and overtime provisions of the FLSA either individually or as a collective action on behalf of himself and "other employees similarly situated."  29 U.S.C. § 216(b).  Unlike a class action filed under Federal Rule of Civil Procedure 23(c), a collective action under Section 216(b) provides for a procedure to "opt-in," rather than "opt-out."  *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 225 (5th Cir. 2011) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)). Although the Fifth Circuit has declined to adopt a specific test to determine when a court should conditionally certify a class or grant notice in a case brought under the FLSA, the majority of courts within the Fifth Circuit have adopted the *Lusardi* two-stage approach, after *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).[2]

The two stages of the *Lusardi* approach are the "notice stage" and the "decertification stage."  *See Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1216 (5th Cir. 1995), *overruled on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).  At the notice stage, the district court "determines whether the putative class members' claims are sufficiently similar to merit

---

1. The Court does not cite or consider any *ad hominem* argument presented in Plaintiffs' response. (Doc. 171).
2. *See, e.g., Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 719 (S.D. Tex. 2014) (applying *Lusardi*); *Mateos v. Select Energy Servs., LLC*, 977 F. Supp. 2d 640, 643 (W.D. Tex. 2013) (same); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011) (same); *Marshall v. Eyemasters of Tex., Ltd.*, 272 F.R.D. 447, 449 (N.D. Tex. 2011) (same).

sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Mooney*, 54 F.3d at 1214. If the court finds that the putative class members are similarly situated, then conditional certification is warranted, and the plaintiffs are given the opportunity to send notice to potential class members. *Id.* After the class members have opted in and discovery is complete, the defendant may then file a decertification motion—the second stage of the *Lusardi* approach—asking the court to reassess whether the class members are similarly situated. *Id.* At that point, the court will fully evaluate the merits of the class certification. *Id.*

After discovery is largely complete, the Defendant may move to decertify the conditionally certified class—initiating the second stage of the *Lusardi* approach. *Vanzzini*, 995 F. Supp. 2d at 720 (citing *Aguirre v. SBC Comm'ns, Inc.*, CIV.A. H-05-3198, 2006 WL 964554, at *5 (S.D. Tex. Apr. 11, 2006). "At [the decertification] stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Mooney*, 54 F.3d at 1214. If the Court determines the plaintiffs are similarly situated, the collective action proceeds. *Vanzzini*, 995 F. Supp. 2d at 720 (citing *Aguirre*, 2006 WL 964554, at *5). "Alternatively, if the court finds that the [plaintiffs] are not similarly situated, the opt-in plaintiffs are dismissed without prejudice to bringing their own actions, and the original plaintiffs may proceed with their individual claims." *Id.* (citations omitted). As in the notice stage, at the decertification stage "[s]imilarly situated does not mean identically situated." *Basco v. Wal-Mart Stores, Inc.*, CIV.A. 00-3184, 2004 WL 1497709, at *5 (E.D. La. July 2, 2004). "At step two, courts generally consider the following factors when determining whether a

lawsuit should proceed collectively: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008) (citations omitted). "The three factors are not mutually exclusive and there is considerable overlap among them." *Maynor v. Dow Chem. Co.*, 671 F. Supp. 2d 902, 931 (S.D. Tex. 2009) (quoting *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 574 (E.D. La. 2008)).

The burden is on the Plaintiff to prove that the individual class members are similarly situated at the decertification stage. *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008) (citations omitted).  "The decision whether to decertify a collective action is within the district court's discretion." *Falcon*, 580 F. Supp. 2d at 534 (citing *Mooney*, 56 F.3d at 1213*; Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1348–49 (S.D. Fla. 2007)).

### III.   DISCUSSION

Defendants move to decertify this collective action. (Doc. 146). As the Court determines that Plaintiffs are similarly situated and that fairness and procedural considerations favor collective treatment of the case, the Court **DENIES** Defendants' decertification Motion. *Id.*

#### A.  Factual and Employment Settings of the Individual Plaintiffs

The first factor to consider is whether disparate factual and employment settings of the individual Plaintiffs favor decertification. *Falcon*, 580 F. Supp. 2d at 534. "This first factor assesses the opt-in plaintiffs' job duties, geographic location, supervision, and salary to determine if the Plaintiffs are similarly situated." *Reyes v. Tex. Ezpawn, L.P.*, CIV.A. V-03-128, 2007 WL 101808, at *2 (S.D. Tex. Jan. 8, 2007) (citing *Johnson v. TGF Precision Haircutters, Inc.*, CIV.A. H-03-3641, 2005 WL 1994286, at *2 (S.D. Tex. Aug. 17, 2005); *Lusardi*, 118

F.R.D. at 358–59). A common job title does not necessarily mean plaintiffs performed the same work. *Id.* at \*4 (citing *Morisky v. Pub. Servc. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000)).

Defendants contend, "[e]ven though Plaintiffs may have generally performed the same type of work, the ways they performed that work (which has great impact on the exemption issues) varied by Plaintiff." (Doc. 146 at 25). Specifically, Defendants cite that some pressure control operators (PCOs) trained while others were trainees, and the training period varied among PCOs. *Id.* Defendants also state that Plaintiffs did not work at the same locations or have the same supervisors. *Id.* Finally, Defendants note that Plaintiffs performed various jobs at different frequencies—such as stage jobs, tow jobs, or hotshot runs. *Id.* at 26.

Despite these differences, Plaintiffs shared similar factual and employment settings. Plaintiffs explain that PCOs prepared and loaded equipment at shops before traveling to wellsites; PCOs primarily performed manual labor including rigging up and down Defendants' equipment and tools at job sites and providing wireline operations; and PCOs worked relatively similar hours while not receiving overtime pay. (Doc. 171 at 4–9). Further, Plaintiffs cite Defendants' single job description for all PCOs to show that PCOs possessed similar qualifications and were expected to perform comparable work—regardless of location:

- High school diploma or equivalent;

- Current NCCCO Crane and pressure control certification, or ability to obtain certifications within 120 days;

- Class A Commercial Driver's license or ability to get one within 120 days;

- Willingness to work outside in environmental conditions at dangerous worksites involving risk of electrical shock; exposure to fumes or airborne particles; and exposure to toxic or caustic chemicals.

- Ability to frequently lift objects that weigh 50 pounds and occasionally lift over 150 pounds or more; frequently climb or balance and stoop, kneel, crouch or crawl; climb up and down ladders; work on slippery uneven circumstances; complete a Physical Capacity Test.

*Id.* at 8.

Whether or not PCOs were trainers or trainees, had different supervisors, or performed specific tasks at different frequencies, PCOs shared factual and employment settings beyond simply sharing the same job title. Regardless of their location, the evidence shows PCOs performed relatively similar work, worked similar hours, and possessed similar qualifications while receiving no overtime pay.

## B. Defendants' Defenses

The second factor to consider is whether the various defenses available to Defendants appear to be individual to each Plaintiff. *Falcon*, 580 F. Supp. 2d at 534. Defendant argues:

> Of the utmost importance in this case is the undeniably individualized analysis required by the overtime exemptions asserted by Defendants that render them plaintiff-specific. By their nature, the exemptions at issue require consideration of numerous plaintiff-specific, job-specific, vehicle-specific, duties-specific, and workweek specific elements to determine liability.

(Doc. 146 at 9). Specifically, Defendants assert the highly individualized inquiries of the Motor Carrier Act (MCA) Exemption, 29 U.S.C. § 213(b)(1), and Highly Compensated Employee (HCE) Exemption, 29 C.F.R. § 541.601(a), (b)(1), render collective treatment inappropriate. (Doc. 146 at 9–24).

### i.   MCA Defense

Defendants spend significant portions of their motion briefing the MCA and the Technical Corrections Act (TCA). (Doc. 146 at 10–13). Defendants then enumerate a significant

number of fact questions that could arise regarding the application of the MCA and TCA in this

case:

- Did Plaintiff perform duties as a driver, driver's helper, loader, or mechanic?

- Did Plaintiff perform duties of safety-affecting activities on a motor vehicle? How often?

- Did Plaintiff cross state lines while performing his duties?

- If the Plaintiff did not cross state lines, could the employee, in the regular course of employment, reasonably have been expected to make an interstate journey?

- What motor vehicles did Plaintiff operate?

- What is the gross vehicle weight rating of each vehicle?

- What is the gross vehicle weight of each vehicle?

- Did Plaintiff tow a trailer with any vehicle driven in any workweek and, if so, what is the gross vehicle weight rating or gross vehicle weight of the combined vehicle and tow?

- If Plaintiff operated a motor vehicle weighing 10,000 pounds or less in transportation on public highways in interstate commerce, how often?

- If Plaintiff operated a motor vehicle weighing 10,000 pounds or less in transportation on public highways in interstate commerce, during which work weeks did he do so?

- For what purpose did each Plaintiff operate one or more of these vehicles?

- What "work" did each Plaintiff perform in connection with each of these vehicles?

*Id.* at 13–14. Defendants summarize how these fact questions will complicate the collective

treatment of this case. *Id.* at 14–19.

However, the Court doubts that many of these issues will be raised in the trial based on its reading of Defendants' Motions for Summary Judgment. (Docs. 143, 144, 145). Defendants' nearly identical motions specifically address the applicability of the MCA and TCA to three Plaintiffs. *Id.* The motions turn not on the numerous questions bulleted above, but only on whether the three Plaintiffs—during certain weeks—drove F-550 trucks or worked less than 40 hours. *Id.* These issues do require specific factual inquiries concerning each Plaintiff, but not to the extent expressed in Defendants' decertification motion. *Id.*

Additionally, the motions for summary judgment rely heavily on drivers' logs to show the types of trucks Plaintiffs drove and the hours Plaintiffs worked. *Id.* Plaintiffs respond by criticizing the accuracy of the drivers' logs. (Docs. 166, 167, 169). Therefore, the evidence used to support the narrow fact questions is limited. Accordingly, this defense should not overly complicate the trial as Defendants support the defense with a limited body of evidence.

The Court also notes that many of the specific fact questions cited by Defendants apply to each Plaintiff—i.e. Defendants raise the same defenses against most, if not all, Plaintiffs. This lends support to the notion that Plaintiffs are similarly situated. The Court references one of Defendants' cited cases to support this position. In *Vanzzini*, the court considered certifying a collective action when a defendant raised an MCA defense:

> Defendants have legitimate individualized defenses **with respect to at least one of the putative class members.** While the evidence available was not sufficient to grant summary judgment for the reasons explained above, **Defendants may still put on evidence to demonstrate that the MCA exemption applies to Mr. Flanagan, which they may not do with respect to any of the other remaining opt-in class members.** The kind of highly factual, individualized inquiry that determining whether the MCA exemption applies to Mr. Flanagan would require in the wake of the Court's decision on Defendants' MCA Summary Judgment Motion counsels against including him in the certified class.

*Vanzzini*, 995 F. Supp. 2d at 723 (emphasis added). The court did not include Mr. Flanagan in the certified class because the MCA defense would apply solely to Mr. Flanagan, not to other putative class members. *Id.* at 723–724. Here, Defendants assert MCA defenses against most, if not all, Plaintiffs. (Doc. 87 at 9). Therefore, Plaintiffs in this case are more similarly situated than Mr. Flanagan was to the putative class members in *Vanzzini*.[3] In other words, although the MCA defense may require specific factual inquiries about each Plaintiff, Defendants assert the MCA defense against every Plaintiff. Therefore, collective treatment is less problematic.

### ii.    Highly-Compensated Employee Defense

Defendants next contend that the HCE raises individualized issues that preclude collective treatment. (Doc. 146 at 20). Defendants argue:

> Indeed, most discovery Plaintiffs admitted that they earned in excess of $100,000 on an annualized basis. (*See* fn. 2 supra). However, some Plaintiffs will deny that they earned more than $100,000 annually. *See e.g.,* (Ex. T-N. Renteria Response to Request for Admission No. 1). So as a threshold matter, the highly compensated exemption may be available for some operators based on their annualized earnings, but not for others. Thus, there are discrepancies among which defenses may be asserted and which exemptions may apply to each Plaintiff.

*Id.* at 21. Defendants also note that the HCE defense will require an examination of Plaintiffs' management activities. *Id.* at 21–22.

---

3. Defendants also cite *Rojas*, an unreported district court case from a different Circuit. *Rojas v. Garda CL Se., Inc.*, 13-23173-CIV, 2015 WL 5084135 (S.D. Fla. Aug. 28, 2015). In *Rojas*, the court decertified a collective action where the defendant raised an MCA defense because, "Determining coverage will require an individual inquiry into the amount of time each opt-in plaintiff used a light or personal vehicle as opposed to an armored vehicle." *Id.* at *6. Yet, other similarly weighted opinions reached the opposite conclusion: "Defendants argue that several individualized defenses merit decertification here. First, Defendants contend that determining whether distributors are subject to . . . the 'Motor Carrier Act Exemption' . . . would require the factfinder to hear and weigh significant individualized evidence. The court finds, however, that these exemptions, if applicable to any distributors, do not overwhelm the 'similarly situated' analysis." *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, 3:12-CV-00596-MOC, 2015 WL 1346125, at *18 (W.D.N.C. Mar. 24, 2015).

Defendants also cite *Peña*. *Peña v. Handy Wash, Inc.*, 14-20352-CIV, 2015 WL 11713032, at *10 (S.D. Fla. May 22, 2015). *Peña* is distinguishable because the court held that the questions of whether each plaintiff was an employee or independent contractor *and* defendants' MCA defense weighed in favor of decertification.

However, Defendants' HCE arguments are subject to the same analysis as the MCA arguments above. Defendants assert the HCE defense against many, if not all, Plaintiffs. (Doc. 87 at 8). Therefore, each Plaintiff must undergo the same factual inquiries—demonstrating again that the Plaintiffs are similarly situated.

Overall, it appears that Defendants assert the MCA and HCE defenses against most Plaintiffs and rely on a limited body of evidence to support the defenses. Therefore, each Plaintiff must undergo the same factual inquiry as to whether that Plaintiff is subject to the MCA or HCE exemption. The Court does not see how posing this inquiry 70 times in one collective trial is any less difficult then posing the same inquiry 70 times in 70 separate trials.

## C. Fairness and Procedural Considerations

The third factor to weigh requires an examination of fairness and procedural considerations. *Falcon*, 580 F. Supp. 2d at 534. Under this factor, the Court considers "the primary objectives of the FLSA § 216(b) collective action: (1) to lower costs to the plaintiffs through the pooling of resources, and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity. *Reyes*, 2007 WL 101808, at *6 (citing *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). "However, 'the Court must also determine whether it can coherently manage the class in a manner that will not prejudice any party.'" *Mahoney v. Farmers Ins. Exch.*, 4:09-CV-2327, 2011 WL 4458513, at *10 (S.D. Tex. Sept. 23, 2011) (citing *Johnson*, 2005 WL 1994286 at *7).

The Court first considers the lower costs to Plaintiffs due to the pooling of resources. Defendants suggest:

> Plaintiffs have benefitted from whatever efficiency has been gained through the conditionally certified action and discovery from Defendants to date, but given the liability issues that are

> purely personal to each Plaintiff the case cannot remain certified or
> be tried on a representative basis fairly or efficiently.

(Doc. 146 at 27–28). Nonetheless, as Plaintiffs note, the alternative is to dismiss the opt-in

Plaintiffs' claims without prejudice. (Doc. 171 at 20); *Vanzzini*, 995 F. Supp. 2d at 720. The

result would be the filing of 70 identical lawsuits which would proceed to 70 identical trials.

Such a situation would result in an exponential growth in costs—both in money and time—for

both parties. *See Vanzzini*, 995 F. Supp. 2d at 723 (Stating, "there is a vast difference between

granting decertification regarding a potential class of hundreds, or even dozens, and thereafter

facing as many individual suits, and granting decertification regarding two potential class

members."). Concerning costs and efficiency to both parties, collective action is favored.

The Court next considers the second and third factors—the ability to manage a collective

action to resolve common issues without prejudicing either party. As mentioned previously, the

Plaintiffs share similar factual and employment similarities and Defendants' defenses, while

requiring some specific factual questions, are generally asserted against all Plaintiffs and

supported by a limited body of evidence. Further, the Court notes this case is set for a bench trial,

which provides flexibility in juggling a potentially complex case. (Doc. 141). Accordingly, the

Court believes the trial can be collectively managed fairly and efficiently.

Defendants cite *Johnson* as "a cautionary tale of a district court's erroneous denial of a

defendant's decertification motion, and the waste of judicial and litigant resources and time that

resulted." (Doc. 146 at 28) (citing *Johnson*, 561 F. Supp. 2d at 574). The cautionary tale of

*Johnson* is admittedly unnerving. In the case, the Court denied the defendant's decertification

motion. *Id.* at 569. At the bench trial:

> [T]he Court heard 43 hours of live trial testimony and
> presentations from counsel. Each side called a full complement of
> 20 nonexpert witnesses, either live or by deposition. Big Lots

11

> called seven witnesses live and submitted depositions of 13
> more . . . .
>
> . . . .
>
> The plaintiffs did not call any fact witnesses live at trial. Instead,
> they offered the deposition testimony of 20 individuals. . . . The
> parties also submitted more than a thousand exhibits, consisting of
> corporate job descriptions, store and employee manuals, payroll
> records, declarations prepared by opt-in plaintiffs, survey
> responses completed by opt-in plaintiffs, and employee personnel
> records.

*Id.* at 570. Post-trial, and after considering the full record, the court reached "the inescapable conclusion that the all or nothing posture of this case makes ruling on the merits fundamentally unfair to both sides" and decertified the action. *Id.* at 588. Based on *Johnson*, Defendants warn of the inefficiencies of proceeding collectively to trial only to later realize decertification is proper.[4]

Despite *Johnson*, at this point in the lawsuit Plaintiffs appear similarly situated, and Defendants assert common Defenses—although potentially fact-intensive—against each Plaintiff. The Court believes the limited nature of the evidence and the parties' bench trial request will enable an efficient and fair resolution of the case. Therefore, collective resolution is appropriate for this case

## IV.   CONCLUSION

After a reviewing the three factors cited above, the Court finds Plaintiffs share similar factual and employment settings and are similarly situated, Defendants' defenses are more

---

4. *Johnson* is a cautionary tale but so is the story of decertification, which will result in the significant inefficiencies and costs discussed above. The Court would rather proceed with a potentially difficult collective trial than to decapitate the hydra and watch as the single trial sprouts into 70 potential mini-trials. Of course, if the facts presented at trial demonstrate that decertification is proper, the Court will revisit the issue like the *Johnson* court and accept the regrettable results. However, at this point, collective treatment appears appropriate and efficient.

collective than individual, and collective resolution is fair and efficient. Accordingly, the Court

**DENIES** Defendants' Motion for Decertification. (Doc. 146).

It is so **ORDERED**.

SIGNED this 30th day of June, 2018.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE