UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| JASON SNIVELY, STEPHEN CLARK, | § | |
| and all others similarly situated; | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | No. MO:15-CV-00134-DC |
| | § | |
| PEAK PRESSURE CONTROL, LLC, | § | |
| and NINE ENERGY SERVICES, LLC, | § | |
| *Defendants*. | § | |

### ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' WHITE COLLAR EXEMPTION DEFENSES

BEFORE THE COURT is Plaintiffs Jason Snively and Stephen Clark's, individually and on behalf of all others similarly situated, Motion for Partial Summary Judgment on Defendants' White Collar Exemption Affirmative Defenses. (Doc. 148). After due consideration, the Court **DENIES** Plaintiffs' Motion. *Id.*

#### I.   FACTUAL BACKGROUND

Plaintiffs filed this case on August 26, 2015, alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et. seq.* (Doc. 1). Plaintiffs are pressure control operators (PCOs) who claim they did not receive overtime for hours worked in excess of 40 hours in a single workweek. (Doc. 85 ¶ 1). On February 29, 2016, the Court conditionally certified the following class: "All pressure control operators who were employed by Nine Energy Services, LLC or Peak Pressure Control, LLC from August 26, 2012, to the present who were paid in whole or in part on a salary basis." (Doc. 56).

On May 1, 2018, the parties filed seven motions for summary judgment, a motion for decertification, and a motion to compel deposition testimony. (Docs. 143, 144, 145, 146, 148,

149, 150, 151, 152). Subsequently, the parties filed a motion to strike evidence and two motions requesting the Court take judicial notice of certain evidence. (Docs. 165, 182, 185).

This order specifically addresses Plaintiffs' Motion for Summary Judgment on Defendants' White Collar Exemption Affirmative Defenses. (Doc. 148). Plaintiffs contend there is no genuine issue of material fact on the administrative and highly-compensated employee (HCE) exemptions asserted by Defendants—collectively referred to as the "White-Collar Exemptions." *Id.* at 3. The parties filed a response and reply to the motion. (Docs. 162, 173).

## II.   LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the nonmoving party. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.*

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue

for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The admissibility of summary judgment evidence is subject to the same rules of admissibility applicable to a trial. *Resolution Tr. Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995) (citing *Munoz v. Int'l All. of Theatrical Stage Emps. etc.*, 563 F.2d 205, 297 n.1 (5th Cir. 1977)).

### B. Exemptions

The FLSA "requires an employer to pay overtime compensation to any employee working more than forty hours in a workweek." *Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016); 29 U.S.C. § 207. There are, however, exemptions to the FLSA. *Carranza v. Red River Oilfield Servs., LLC*, CV H-15-3631, 2017 WL 387196, at *2 (S.D. Tex. Jan. 27, 2017). Courts give FLSA exemption "a fair reading." *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018).

Under the first exemption at issue, an employee is exempt from the FLSA if they are employed in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a). The Department of Labor defines the various aspects of the executive, administrative, or professional exemption through regulations. *Nevada v. U.S. Dep't of Labor*, 275 F. Supp. 3d 795, 798 (E.D. Tex. 2017), *appeal docketed*, No. 17-41130 (5th Cir. Nov. 2, 2017). Concerning

the administrative exemption asserted here, the term "employee employed in a bona fide administrative capacity" means any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.[1]

The second exemption at issue is the HCE exemption. "The Highly Compensated Employee Exemption applies to employees who have a 'total annual compensation of at least $100,000.00'(which must include at least $455.00 per week paid on a salary or fee basis) and who regularly and customarily perform at least one of the duties of an executive, administrative, or professional employee." *Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678, 710 (S.D. Tex. 2012), *aff'd*, 755 F.3d 279 (5th Cir. 2014); 29 C.F.R. § 541.601.

### III. DISCUSSION

Plaintiffs move for summary judgment contending there is no genuine issue of material fact concerning Defendants' White-Collar Exemption defenses. (Doc. 148). Defendants only assert Plaintiffs are exempt under the administrative and HCE exemptions. (*See* Doc. 162 at 4–15). As a result, the Court must only address the administrative and HCE exemptions.

---

1. This definition appears in the 2004 regulations promulgated by the Department of Labor. There is some confusion as to whether the 2004 definition (Old Rule) or a rule promulgated in 2016 (New Rule) controls the current definition of "employee employed in a bona fide administrative capacity." *See Nevada*, 2017 WL 3837230, at *2

Due to the current nationwide injunction halting the implementation of the New Rule, the Old Rule controls. *Id.*; *see also Parrish v. Roosevelt Cty. Bd. of Cty. Comm'rs*, No. CIV 15-0703 JB/GJF, 2017 WL 6759103, at *14 (D.N.M. Dec. 31, 2017) (citing to the Old Rule despite the New Rule because the Old Rule was effective at the time of the plaintiffs' employment).

### C. Administrative Exemption

Plaintiffs contend they are not exempt from the FLSA under the administrative exemption because their primary duty did not include the performance of office or non-manual work. (Doc. 148 at 16). The Regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700.

> The phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

29 C.F.R. § 541.201(a). Work directly related to the management of general business operations includes, but is not limited to:

> work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b).

Plaintiffs cite deposition testimony and other evidence indicating that PCOs' primary duties included operating grease pumps to maintain specified pressures. (Doc. 148 at 2). PCOs maintained these pressures by adjusting nobs and using hand pumps. *Id.*  In its reply, Plaintiffs provide an overview of a PCOs' average day:

- Job Preparation: PCOs prepare, repair, and load equipment at Nine's Shop depending on condition of equipment and tools.

- Travel to Well Site: Texas and New Mexico Well Sites from Midland location.

- Setting/Rigging Up Equipment at Jobsite

- Taking off Night Cap Before Wireline Run: Time PCOs spend in man lift wearing harness on top of the wellhead using tools, including hammers, to take nightcap off of the wellhead.

- Maintain Pressure During Wireline Run (Defendant claims this is PCOs Primary Duty): PCOs get info from wireline or company man regarding wellbore pressure; (2) use hand pumps and turn nobs to set grease pressure within 20% of wellbore pressure; and (3) Wireline, frac, flowback, and pump-down supervise this work by monitoring wellbore pressure during this time.

- Frack Operations: PCOs do not monitor pressure during this time; Another service company monitors pressure during fracking operations. PCOs perform maintenance on their equipment during this time period because "at that point in time frac has the well, and so our equipment is sitting to the side."

- Rigging Down Equipment

- Travel Back to the shop from Texas or New Mexico

(Doc. 173 at 3–4).

Defendants respond: "Plaintiffs' primary duty was managing Defendants' entire well site pressure control operation for Defendants' customers, which involved interacting with the customers and other service providers to complete the well in a safe and efficient manner." (Doc. 162 at 5). Defendants cite the testimony of Eddie Merryman—a corporate representative—who testified that the primary duty of PCOs was "to manage a well site pressure control operation and [pay] attention to detail as well as communicat[e] with the company man and wireline engineer on location." (Doc. 162 at 5). Bruce Morgan—another corporate representative—testified that the PCOs' main responsibility was "interacting with the customers and other service companies in completion of the oil and gas well in a safe and efficient manner." *Id.* Two Plaintiffs—Manuel Romo and Noel Renteria—also testified that PCOs "were in charge" of pressure control

6

operations. (Docs. 162-4 at 2; 162-5 at 3). Defendants also provide deposition testimony from Plaintiffs describing the task of maintaining pressure control as a non-manual task involving the complex monitoring of systems. (Doc. 162 at 6–7). Finally, Defendants note the management and general operations tasks assigned to the PCOs—including marketing and sales and the exercise of discretion and independent judgment in managerial roles. (Doc. 162 at 8–10).

At the summary judgment stage, the Court only determines whether a fact question exists and does not weigh the evidence. *See Caboni*, 278 F.3d at 451. Plaintiffs' cited evidence depicts PCOs as manual labors who performed tasks not directly related to assisting with the running or servicing of Defendants' business. Defendants' cited evidence depicts PCOs as manual and non-manual laborers who performed tasks directly relating to the operating of Defendants' business. The cited evidence indicates there is at least a fact question that PCOs' primary duty directly related to the management or Defendants' business operations. *See* 29 C.F.R. § 541.201(a). Consequently, summary judgment is not appropriate as the evidence indicates that PCOs could be exempt from the FLSA under the administrative exemption.

### D. HCE Exemption

Plaintiffs next move for summary judgment on Defendants' HCE defense because Plaintiffs' primary duties did not include performing office or non-manual labor. (Doc. 148 at 20–21) (citing 29 C.F.R. § 601(d)). As discussed above, there is at least a fact question on whether Plaintiffs' primary duty included performing non-manual labor—specifically, Defendants' evidence relating to the PCOs' managerial role of running well sites, interacting with customers, participating in marketing, and monitoring pressure systems.

Plaintiffs next contend Defendants cannot identify specific duties Plaintiffs allegedly performed which are executive, administrative, or professional. Again, Defendants provide

evidence that creates a fact question on whether Plaintiffs' primary duty involved management and safety operations at Defendants' well sites—work directly related to "safety and health" and "personnel management." (Doc. 162 at 8–9, 10–12); *see* 29 C.F.R. § 541.201(b). Consequently, Defendants do identify at least some specific duties that could qualify as administrative and therefore summary judgment is not appropriate on Defendants' HCE exemption defense.

### IV.  CONCLUSION

Due to the preceding discussion, the Court finds genuine issues of material fact on both of the challenged exemptions. Accordingly, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment on Defendants' White Collar Exemption Affirmative Defenses. (Doc. 148).

It is so **ORDERED**.

SIGNED this 30th day of June, 2018.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE